# IN THE UNITED STATES COURT OF APPEALS
# FOR THE THIRD CIRCUIT

---

No.: 16-3027

---

TARA L. LONG and TODD J. LONG,
Administrators of the Estate of TAMMY E. LONG, Deceased,

Appellants,

v.

ARMSTRON COUNTY d/b/a ARMSTRONG COUNTY JAIL,
and DAVID HOGUE,

Appellees.

---

## BRIEF OF APPELLANT AND APPENDIX—VOLUME I

---

On Appeal from an Order of the Honorable Mark R. Hornak, Entered
May 31, 2016 in the United States District Court
for the Western District of Pennsylvania

---

**KONTOS MENGINE LAW GROUP**

GEORGE M. KONTOS, ESQUIRE
CLAIRE MCGEE, ESQUIRE
603 Stanwix Street
Two Gateway Center, Suite 1228
Pittsburgh, Pennsylvania 15222
(412) 709-6162

DATED: September 23, 2016          COUNSEL FOR APPELLANTS

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ……………………………………….. i, ii, iii

STATEMENT OF JURISDICTION……………………………….......... 1

STATEMENT OF ISSUES ON APPEAL………………………………. 1

STATEMENT OF RELATED CASES AND PROCEEDINGS…………........... 2

STATEMENT OF THE CASE………………………………….......... 2

STATEMENT OF FACTS……………………………………………… 3

SUMMARY OF ARGUMENT……………………………………....6

ARGUMENT FOR APPELLANT……………………………….......... 8

I.    STANDARD OF REVIEW…………………………………………..8

II.   The District Court Erred in Granting the Defendant's
      Motion to Dismiss the Plaintiff's Complaint in its Entirety……………8

      A. The district court erred by holding that the "state created
         danger" Test applied in *Russell* is applicable to the case
         at bar, despite the expansion of the third prong by the
         Third Circuit……………………………………………………..9

         1.  *Russell* was not decided using the modern "state
             created danger" test and is therefore not
             determinative to the case at bar. Application of the
             modern test, established by this Court, requires a
             different analysis—and yields a different result that
             recognizes Tammy Long's status as a member of a
             "discrete class of plaintiffs" by virtue of her status as
             a resident in such close proximity to the Jail…………..9

             a.  Russell predates the four prong analysis set
                 forth in *Kneipp*…………………………………….9

b. *Morse* and *Bright* expanded the third prong of the "state created danger" theory to include as foreseeable plaintiffs "members of a discrete class of persons subjected to the potential harm brought about by the state's actions.............................................................10

2.  Under the modern four prong analysis of the "state created danger" theory, Plaintiffs have plead sufficient facts to withstand the Defendants' Motion to Dismiss...........................................................14

a. Tammy Long and the residents in close proximity of the Armstrong County Jail are foreseeable members of a limited, discrete class of persons subjected to the potential harm brought by the states' actions, as opposed to members of the public in general..................................14

b. The harm ultimately caused to Tammy Long was foreseeable and fairly direct............................. 20

c. The Defendants' acted with a degree of culpability that shocks the conscience...............................23

d. The Defendants affirmatively used their authority in a way that created a danger to its citizens in close proximity to Armstrong County Jail, or that rendered the citizens more vulnerable to danger than had the state not acted at all........................25

B. The Plaintiffs complaint establishes a claim for Crissman's actions as a state actor................................................... 27

1.  Plaintiffs' claim satisfies the "Public Function" test.........28

III.    CONCLUSION............................................................29

CERTIFICATION OF BAR MEMBERSHIP

CERTIFICATION OF COMPLIANCE WITH F.R.A.P. 32(a)

CERTIFICATION OF DUPLICATION

CERTIFICATION OF VIRUS CHECK

REQUEST FOR ORAL ARGUMENT

CERTIFICATE OF SERVICE

APPENDIX- VOLUME I

# TABLE OF AUTHORITIES

**Cases**                                                                **Page(s)**

*Brandon v. University of Pittsburgh,*
    477 F.2d 1 (3d Cir. 1973)………………………………………… 28

*Benedict et al. v. Southwestern Pa. Human Resources, Inc. et al.,*
    No. 2:14-cv-0678 (W.D. PA. Mar. 24, 2015)…………………………20

*Bright v. Westmoreland County,*
    443 F.3d 276 (3d Cir. 2006)……………………………............. 9, 10,12

*Blum v. Yaretsky et al.,*
457 U.S. 991 (1982)……………………………………………... 28, 29

*Commonwealth Bank and Trust Co. v. Russell,*
    825 F.2d 12 (3d Cir. 1987)………………………………...1,6,7,9,10,11,
                                                     12, 13

*Edmundson v. Leesville Concrete,*
    500 U.S. 614 (1991)……………………………………...........28

*Estate of Pendleton v. Davis,*
    2007 WL 1300743 (M.D. Pa 2007) ………………………………18

*Evancho v. Fisher,*
    423 F.3d 347, 350 (3d Cir.2005)………………………………….. 8

*Fowler v. UPMC Shadyside,*
    578 F.3d 203, 206 (3d Cir. 2009)…………. ……………………… 8

*Evancho v. Fisher,*
    423 F.3d 347, 350 (3d Cir.2005)………………………………….. 9

*Farrell v. Triangle Publ'ns, Inc.,*
    399 Pa. 102 (1960)) ……………………………………………… 21

*Fowler v. UPMC Shadyside,*
    578 F.3d 203, 206 (3d Cir. 2009)…………. ……………………… 9

*Hedges v. United States,*
   404 F.3d 744, 750 (3d Cir. 2005)................................................. 8, 25

*Kneipp by Cusack v. Tedder,*
   95 F.3d 1199 (3d Cir. 1996)........................................ 9,10,11,18,
   21,23,26,27,28

*Kronmuller v. West End Fire Co.,*
   123 F.R.D. 170 (E.D. Pa. 1999)................................................ 28

*Lugar v. Edmondson Oil Co.,*
   457 U.S. 922 (1982)............................................................. 28

*Mark v. Borough of Hatboro,*
   51 F.3d 1137 (3d Cir. 1995).................................................... 28

*Martinez v. California,*
   444 U.S. 277 (1980)............................................................ 12

*Morse v. Lower Merion Sch. Dist.,*
   132 F.3d 902 (3d Cir. 1997)............................................. 7,10,11,
   12,13,15,18

*Nishiyama v. Dickson County,*
   814 F.2d 277 (6th Cir. 1987)................................................ 13, 24

*Phillips v. County of Allegheny,*
   515 F.3d 224 (3d Cir. 2008)............................................ .....8, 14, 22

*Reed v. Gardner,*
   986 F.2d 1122 (7th Cir. 1993)............................................. 18, 19,
   21,23,24,25

*Rendell-Baker et al. v. Kohn et al.,*
   457 U.S. 830 (1982)........................................................... 28

*Rives v. City of Passaic,*
   365 F.3d 181 (3d Cir. 2004) ................................................ 18

*Rocks v. City of Philadelphia,*
   686 F.2d 645 (3d Cir. 1989)................................................... 8

## **Statutes**

28 U.S.C. § 1291................................................................. 1
28 U.S.C. § 1331................................................................. 1
42 U.S.C. § 1983.......................................................... 1, 6,9,
                                                                    20,23,28

## **Rules**

F.R.C.P 12(b)(6)................................................................. 8
F.R.C.P 4 (a)(1)(A)...............................................................1

## **Other Authorities**

Charlton, Kathleen M., et al, Armstrong County District Attorney,
*Armstrong County District Attorney's Report into the escape of*
*inmate Robert Crissman* (2015)...................................................5, 17

## STATEMENT OF JURISDICTION

This is an appeal from a final judgment of the United States District Court for the Western District of Pennsylvania, entered on May 31, 2016. The District Court had subject matter jurisdiction over this case pursuant to 28 U.S.C. § 1331 (Federal Question). This is an action brought under 42 U.S.C §1983 for violation under the 14th Amendment's Due Process Clause.

The Court of Appeals has jurisdiction over this appeal as it is taken as of right, pursuant to 28 U.S.C. § 1291 (appeals from final decisions of District Courts), from an Order of the District Court dismissing Plaintiffs' claims with respect to this action with prejudice (App., Vol. I, p. A-4).

Plaintiff filed a timely Notice of Appeal on June 29, 2016, within the thirty-day period set forth in the Federal Rules of Appellate Procedure 4 (a)(1)(A) (App., Vol. I, p. A-1).

## STATEMENT OF ISSUES ON APPEAL

1.  Did the district court commit reversible error in finding that Tammy Long was not a member of a discrete class of plaintiffs under the third prong of the "State Created Danger" test, but rather a member of the general public?

    **Suggested Answer:   Yes**

2.  Was the district court's reliance on *Commonwealth Bank and Trust Co. v. Russell*, 825 F.2d 12 (3d. Cir. 1987), misplaced in reference to the "state created danger" test because it precedes the adopted test used by courts today?

    **Suggested Answer: Yes**

3. Was the harm ultimately caused to Tammy Long foreseeable and fairly direct?

   **Suggested Answer:   Yes**

4. Did Armstrong County d/b/a Armstrong County Jail and David Hogue, as state actors, act with willful disregard for the Plaintiff or the class of Plaintiffs, including Tammy Long?

   **Suggested Answer:   Yes**

5. (a) Did Armstrong County d/b/a Armstrong County Jail and David Hogue, use their authority as state actors to create an opportunity that otherwise would not have existed, for Crissman to escape the Jail, which ultimately led to the murder of Tammy Long?

   **Suggested Answer:   Yes**

## STATEMENT OF RELATED CASES AND PROCEEDINGS

To counsel's knowledge, there are no other related cases or proceedings that are before any other court or agency, state or federal.

## STATEMENT OF THE CASE

On November 14, 2015, the Plaintiffs, Tara L. Long and Todd J. Long, administrators of the Estate of Tammy E. Long, deceased, initiated this action against the Defendants in the United States District Court for the Western District of Pennsylvania asserting claims under 42 U.S.C. § 1983.

On January 8, 2016, the Defendants filed their Motion to Dismiss for failure to state a claim upon which relief can be granted. On May 31, 2016, the district court filed its order, which is the basis for this appeal, granting the Defendants' Motion to Dismiss Plaintiffs' complaint with prejudice.

Upon receiving this final order, Plaintiff timely filed her Notice of Appeal on June 29, 2016.

## STATEMENT OF THE FACTS

This action arises out of the killing of Plaintiffs' decedent, Tammy Long, by Robert Crissman, Jr. ("Crissman") on July 30, 2015, who had escaped approximately an hour earlier from the Armstrong County Jail ("Jail").

Crissman had an extensive criminal history which included crimes which can reasonably be said to involve violent behavior.[1] Compl. ¶ 14. Crissman took part in the Jail's Trustee program, which was a type of inmate work release program that provided benefits to the "Trustees" consisting of special housing units as well as being allowed outside of the Jail's confinements, oftentimes without supervision. Compl. ¶¶ 18, 19, 21, 22. Crissman was assigned the job of "tray duty," which, in part, allowed him to be outside of the Jail's walls without being accompanied by a corrections officer. Compl. ¶ 22.

Despite the fact that Crissman was known to the Jail as a user of hard drugs,

---

[1] Defendants' initial Brief, on page 4, avers that Crissman had "never been arrested for a violent crime and had no prior history of violence."¶ 10. Viewing the Complaint, especially when done so with all inferences in favor of the Plaintiffs indicates otherwise. In this respect, Plaintiffs' state that Crissman had a "record of significant criminal behavior [including] multiple instances of theft, criminal trespassing, breaking and entering, etc. . . . had a long history of drug abuse, [and was at the time of his incarceration] suffering the effects of heroin withdrawal, [which was] relayed by Crissman directly to Jail personnel." Such averments belie Defendants' contention that Crissman had an insignificant criminal history, devoid of any propensity toward violent behavior.

and the fact that he even told Jail personnel he had used heroin shortly before his incarceration, he was never drug tested by the Jail at any time during his incarceration. Compl. ¶¶ 17, 24.

Moreover, Crissman was showing signs of heroin withdrawal, and had actually relayed directly to Jail personnel that he was "suffering the effects of heroin withdrawal." The Defendants, quite incredibly however, took the affirmative act of conferring Trustee status upon Crissman on July 29, 2015. Compl. ¶¶ 24, 26. The very next day, while he was conducting his tray duty assignments outside of the jail's walls, and without any supervision, Crissman ran into the woods and successfully escaped from the Armstrong County Jail. The Jail had no surrounding fence. Compl. ¶¶ 28-31. No one from the Jail contacted the town's emergency services or 9-1-1 until nearly fifteen minutes had passed. Compl. ¶ 33. No warning sirens were ever used which would have alerted residents to the escape. Compl. ¶ 33. During that time, Crissman traveled to the Long residence.[2] At the time, Tammy Long resided with Terry Slagle, who was an acquaintance of Crissman's. Compl. ¶ 34. Neither Tammy Long nor Mr. Slagle knew that Crissman had escaped from Jail. Compl. ¶ 35.

Significantly, the Jail provided inmates in the Trustee program civilian clothing that consisted of dark green uniforms, tennis shoes and tee shirts, "***such that***

---

[2] Tammy Long was not an unidentified victim. Crissman actually knew Tammy Long and Terry Slagle. Thus, she is not just a "member of the general public," but rather an identified victim for purposes of the "State Created Danger" test.

*residents within the community such as Tammy Long would be unable to recognize an inmate such as Crissman, as an escapee*". Compl. ¶ 42(j) (emphasis added).

Thus, in addition to the affirmative action of granting Crissman Trustee status, the Jail also provided "street clothes" (as opposed to a clearly labeled 'prison uniform') to Crissman. This in effect, acted as camouflage for Crissman, allowing him to disguise the fact that he had just escaped from jail. The Jail's action in this respect turned out to be of great consequence in aiding Crissman in his assault. Had Crissman shown up at Tammy Long's house (within view of the Jail) wearing a clearly labeled prison uniform, she would have immediately known not to trust him, and not to let him into her house. He would not have been able to gain her trust, come into her home, stay there for some period of time, and carry out his assault.

After Mr. Slagle left for work and Crissman was left alone with Ms. Long, he beat and strangled Ms. Long to death. Compl. ¶ 37.   He subsequently took her car and was recaptured by Kittanning police after a high speed car chase on July 31, 2015.

In the aftermath of Tammy Long's death and Crissman's subsequent recapture, the Armstrong County District Attorney's office undertook an investigation of the Jail's procedures and policies to examine how and why Crissman was able to easily escape. Compl. ¶ 40.  The findings from the investigation were memorialized in a report (the "D.A. Report").  The D.A. Report detailed affirmative misuses of authority and various policies, customs, and training failures.  These deficiencies are

more fully stated in Plaintiffs' Complaint. Compl. ¶¶ 42-45. At the same time, Armstrong County also hired an outside consulting firm, CSI Corporate Security and Investigations, to conduct a similar review. Its report (the "CSI Report") revealed findings similar to that of the D.A. Report, the contents of which are more fully explained in Plaintiffs' Complaint. Compl. ¶¶ 48, 49.

Plaintiffs have subsequently filed wrongful death and survival actions as representatives of Tammy Long against the County and Warden David Hogue pursuant to 42 U.S.C. § 1983. Plaintiffs' claim that Defendants are liable for violating Tammy Long's 14th Amendment rights is based on two distinct theories: First, that the Third Circuit's "state created danger" test is satisfied in this matter. Secondly, that Crissman's status as a Trustee satisfies the well-settled "Public Function test" in determining who is a "state actor" for § 1983 purposes.

## SUMMARY OF THE ARGUMENT

The Plaintiffs' §1983 claims are brought under the "state created danger" test, which is the crux of this appeal and was the focus of the district court's holding. The district court below erred in deciding that the decedent, Tammy Long, did not meet the requirement under the third prong of the test because she "was not a member of discrete class of plaintiffs, but rather was a member of the general public." (App., Vol. I, p. A-6). In support of its conclusion, the district court cited *Commonwealth Bank and Trust Co. v. Russell*, 825 F.2d 12 (3d. Cir. 1987), which Plaintiffs' aver should not be determinative to the outcome of this case because the "State Created Danger" test

was expanded since the *Russell* opinion by *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902 (3d Cir. 1997). Plaintiffs submit that if *Russell* was decided using today's "State Created Danger" test, this Court would have held differently.

Moreover, by virtue of her living so extraordinarily close to the Jail (i.e. within eyeshot of the Jail) Tammy Long is a member of discrete class of plaintiffs because she is a foreseeable victim subject to the action brought by the Defendants. What is more, Tammy Long was a foreseeable victim because Crissman personally knew Tammy Long (and her boyfriend, Terry Slagle). He knew that they lived nearby and, therefore, Tammy was not merely a member of the general public at large.

At the time the Defendants' affirmatively placed Crissman in the Trustee program, they had actual knowledge that he was going through heroin withdraws and knew that he was a flight risk because Crissman had repeatedly been AWOL by not reporting to his parole officer or following his parole guidelines. Placing Crissman in the Trustee Program and permitting him to be outside the Jail with no supervision amounts to a degree of culpability that shocks the conscience.

Moreover, the Defendants created an environment that provided Crissman with the opportunity to escape, which made it foreseeable that he would find refuge in the nearby residences, likely Tammy Long's. Thus, the tragic death of Tammy Long was foreseeable given the circumstances leading up to and at the time of Crissman's escape.

## **ARGUMENT FOR APPELLANT**

I. STANDARD OF REVIEW

Although, the district court did not consider the remaining prongs of the four prong "State Created Danger" test in its opinion, the Appellant will, nevertheless, address all four prongs as it was raised in Defendants' Motion to Dismiss.

The trial court, when considering a Rule 12(b)(6) motion, is required to accept as true all allegations in the complaint and all reasonable inferences that can be drawn therefrom, and view them in the light most favorable to the plaintiff.

When reviewing an order by a district court granting a 12(b)(6) motion to dismiss, the Court exercises a plenary standard. *Fowler v. UPMC Shadyside*, 578 F.3d 203, 206 (3d Cir. 2009). *See also, Evancho v. Fisher,* 423 F.3d 347, 350 (3d Cir.2005*); Phillips v. County of Allegheny*, 515 F.3d 224, 230 (3d Cir. 2008).

The standard for dismissal for a failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6) is well settled. The defendant has the burden of showing that no claim has been presented. *Hedges v. United States,* 404 F.3d 744, 750 (3d Cir. 2005). All material allegations must be accepted as true and construed in a light most favorable to the non-moving party. *Rocks v. City of Philadelphia*, 686 F.2d 645 (3d Cir. 1989).

II. THE DISTRICT COURT COMMITTED REVERSIBLE ERROR IN GRANTING THE DEFENDANT'S MOTION TO DISMISS PLAINTIFFS' COMPLAINT IN ITS ENTIRETY.

8

A. THE DISTRICT COURT ERRED BY HOLDING THAT THE STATE CREATED DANGER TEST APPLIED IN *RUSSELL* IS APPLICABLE TO THE CASE AT BAR, DESPITE THE EXPANSION OF THE THIRD PRONG BY THE THIRD CIRCUIT.

1. ***Russell*** **was not decided using the modern "state created danger" test and is therefore not determinative to the case at bar. Application of the modern test, established by this Court, requires a different analysis—and yields a different result that recognizes Tammy Long's status as a member of a "discrete class of plaintiffs" by virtue of her status as a resident in such close proximity to the Jail.**

*Commonwealth Bank & Trust Co., N.A. v. Russell*, 825 F.2d 12 (3d Cir. 1987) was decided prior to both the adoption of the four prong analysis under the "state created danger" theory by *Kneipp by Cusack v. Tedder*, 95 F.3d 1199 (3d Cir. 1996), and the expansion of the third prong as discussed in *Morse v. Lower Merion Sch. Dist.,* 132 F.3d 902 (3d Cir. 1997) and *Bright v. Westmoreland County,* 443 F.3d 276 (3d Cir. 2006). Consequently, the developments leading to the modern "state created danger" theory, as discussed below, demonstrate the fallibility of the anachronistic approach suggested by the Defendants. Simply put, the *Russell* court did not rely upon nor analyze the facts using the modern "state created danger" theory and the inclusion of a "discrete class of plaintiffs" analysis established by this Court.

a. ***Russell*** **predates the four prong analysis set forth in** ***Kneipp.***

This Court in *Kneipp* clearly stated that the "state created danger" theory is a viable mechanism for establishing a constitutional violation under 42 U.S.C. § 1983."

*Kneipp* at 1201.   The *Kneipp* opinion sets out the "state created danger" theory by

underlining a four prong analysis, which requires the plaintiff to plead the following:

> (1)    The harm ultimately caused was foreseeable and fairly direct;
> (2)    The state actor acted in willful disregard for the safety of the plaintiff;
> (3)    There existed some relationship between the state and the plaintiff; and
> (4)    The state actors used their authority to create an opportunity that otherwise would not have existed for the third party's crime to occur.

*Id. at 1208.*

> **b.    *Morse* and *Bright* expanded the third prong of the "state created danger" theory to include as foreseeable plaintiffs "members of a discrete class of persons subjected to the potential harm brought about by the state's actions."**

By relying on *Russell*, the district court conflates the analysis to be used to

evaluate Plaintiffs' claims, particularly as it relates to the analysis of the third prong of

the "state created danger" theory. In doing so, the district court ignores the distinction

between the "state created danger" test that pre-dates *Morse* and *Bright,* and the

modern test used by the courts today. The district court did not find the need to

delineate between the types of plaintiffs analyzed in *Russell* (i.e. specific, identifiable

victims) from the modern standard (i.e. discrete class of plaintiffs) because it said

these rules say the same thing. (App., Vol. I, p. A-10). The district court held that

*Morse* and *Bright* already make explicit what was implicit in *Russell*, that whether

identifying the victim as a "discrete class of plaintiffs" or as an "identifiable victim" is

interchangeable, because under either standard the plaintiff must be distinct from the

general public at large. This oversimplification fails to consider the real difference between the pre and post-*Kneipp* analysis of the questions at issue here. While either category of plaintiffs must be distinct from the general public, since *Kneipp*, the Third Circuit has also recognized other situations involving plaintiffs who are part of an identifiable and discrete class of plaintiffs (not just specific, identifiable plaintiffs), who fit within the ambit of those persons having actionable claims under the "state created danger" theory. *Morse at* 914. What is clear is that the district court was incorrectly applying the outdated standard, particularly regarding the third prong. (App., Vol. I, p. A-9). As is evidenced by its statement quoting *Russell* that "since the defendants had no knowledge of danger peculiar to the [murder victims], as distinguished from the other members of the general public" the plaintiffs could not reasonably be characterized as individuals who defendants knew 'faced any special danger." Contrary to the district court's holding, this Court has held (post-*Russell*) that the relationship element of the "state created danger" test does not require a state to know that it is creating a risk of danger to a specific plaintiff. *Morse* at 912.

Moreover, the district court stated that *Morse* does not implicitly overturn *Russell* because it speaks favorably of *Russell* as "helping to establish the contours of cognizable state-created danger test." (App., Vol. I, p. A-10). The *Russell* opinion remains good law to the extent that it merely facilitated toward the development of the current "state created danger" test. In fact, the *Morse* court acknowledges the change in the foreseeable plaintiff standard that the court applied in *Russell* as

11

compared to the standard it applied.  For example, in *Russell,* the plaintiffs were required to allege that "they faced a particular threat of harm which set them apart from the general public." *Morse* at 912.

Specifically, ten years after *Russell* was decided, *Morse* repudiates this narrow standard, stating:

> "It seems evident that the Supreme Court's "public at large" language in *Martinez*[3], as well as our statements in *Commonwealth* [*Russell*] . . ., exclude from the reach of the state created danger theory those instances where the state creates only a threat to the general population. But it does not appear this limitation necessarily restricts the scope of § 1983 to those instances where a specific individual is placed in danger.  Another view of these cases would allow a plaintiff . . . ***to bring a state created danger claim if the plaintiff was a member of a discrete class of persons subjected to the potential harm brought about by the state's actions.  Stated differently, depending on the facts of a particular case, a "discrete plaintiff" may mean a specific person <u>or a specific class of persons</u>.***"

*Morse* at 913. (Internal quotation marks in original)(Emphasis added).

*Bright,* likewise broadened the third prong of the "state created danger" which now reads as follows:

> ". . . (3) a relationship between the state and the plaintiff existed such that "the plaintiff was a foreseeable victim of the defendant's acts," ***or a "member of a discrete class of persons subjected to the potential harm brought about by the state's actions,"*** *as opposed to a member of the public in general. . ."* *Id.* (emphasis added)

---

[3] *Martinez v. California,* 444 U.S. 277 (1980).

Thus, since *Russell*, the "state created danger" test has expanded the third prong to include situations that create a relationship between the state and plaintiffs who, like the victims here, are part of an identifiable and discrete class. *Morse at* 914.[4]

As demonstrated above, *Russell* was not decided using the "discrete class of plaintiffs" standard and the modern four prong analysis of the "state created danger" theory. For these reasons, the *Russell* decision should not be determinative to the case at bar. It is Plaintiffs' position that if *Russell* was decided today, this Court would have held differently.

The Plaintiffs respectfully move this Court to analyze the present facts before this Court, in light most favorable to the Plaintiffs, using the modern "state created danger" test, advanced by this very Court. As discussed in further detail below, Crissman was an actual acquaintance of the victims here. This assault was not a random attack to persons of the general public, rather, Tammy Long was a

---

[4] It is also worth noting that even though the Defendants' and the district court rely so heavily on *Russell*, this Court, nevertheless, took great efforts to illustrate a factual scenario very similar to the plaintiffs' case here, where it noted § 1983 liability **would** apply. (See *Russell* at 16-17, citing *Nishiyama v. Dickson County*, 814 F.2d 277,281(6th Cir. 1987) (finding an inmate who, like Crissman, had been given 'Trusty' status, used a patrol car (an 'instrumentality' provided by the state) to aid in his perpetration of his crime (pulling over a random motorist and raping her)). As in the case found here, the 'Trusty' status, coupled with the state provided 'instrumentality' (i.e., the regular 'street' clothing given to Crissman by the jail) helped him to disguise the fact that he was an escapee, allowing him to gain Tammy Long's trust and enter her home; just as the 'Trusty' in *Nishiyama* used the state provided patrol car to hide his true identity to gain the trust of a passing motorist.

foreseeable, identifiable plaintiff who lived within eyeshot of the Jail, thus creating a limited class of plaintiffs that were foreseeable of the harm brought by the Defendants.

Plaintiffs will now address each prong of the "state created danger" theory, and demonstrate that they have plead sufficient facts in their Complaint to withstand the Defendants' Motion to Dismiss.

**2. Under the modern four prong analysis of the "state created danger" theory, the Plaintiffs have plead sufficient facts to withstand the Defendant's Motion to Dismiss.**

Although, the district court did not consider in its opinion prongs one (1), two (2) and four (4) of the "state created danger" test, the Appellant will, nevertheless, address all four prongs as they were each raised in the Defendants' Motion to Dismiss.

Taking into account the Plaintiffs argument above, it seems appropriate to begin the "state created danger" theory analysis with the third prong and, in turn, discuss the remaining prongs.

**a. Tammy Long and the residents in close proximity of the Armstrong County Jail are foreseeable members of a limited, discrete class of persons subjected to the potential harm brought about by the states' actions, as opposed to members of the public in general.**

14

As the Third Circuit held in *Phillips v. County of Allegheny*, 515 F.3d 224, 242 (3d Cir 2008), "The state created danger test requires that some relationship exist between the state and the plaintiff. To adequately allege such a relationship, a plaintiff need not plead facts that show the same "special relationship" basis for constitutional liability." Citing *Morse*, 132 F.3d at 912. In *Morse*, **the Third Circuit held that the relationship requirement is primarily focused on foreseeability.** *Morse* at 913. Stated differently, the relationship requirement of the third prong, "contemplates some contact such that the plaintiff was a foreseeable victim of the defendant's acts in a tort sense. *Phillips* at 242, See also, *Morse* at 912.

Although, foreseeability is a requirement in the first prong, a similar foreseeability analysis will be discussed, here, as this Court has determined that foreseeability is the primary focus of the third prong.

Plaintiffs' Complaint states in pertinent part the following with respect to Tammy Long's status as a member of a discrete class of persons:

> ¶ 6 The Jail is located among a residential community. Tammy Long ***resided within a quarter mile of the Jail, being able to see the Jail from the front porch of her home***.
>
> . . .
>
> ¶ 23 At all times relevant hereto, inmates with trustee status were representatives of the Jail itself [and] Trustees, like Crissman, acted . . . with the understanding that they had been property vetted and screened ***in such a manner as to not present a heightened risk . . . to those members of the community such as Tammy Long, who resided so close to the Jail.***
>
> . . .

¶ 26    During the time period immediately proceeding his placement into the Trustee program, it was made known to the Jail that Crissman . . . *was suffering the effects of heroin withdrawal. Such information was relayed by Crissman directly to Jail personnel* . . .

. . .

¶ 27    Despite such obvious signs of withdrawal . . . *the Jail conferred special status upon him that allowed him unsupervised access to areas outside of the Jails confines*, as described above.

. . .

¶ 34    . . . *Crissman ran to the residence of an acquaintance, Terry Slagle.* Mr. Slagle lived with Tammy Long. She was inside when Crissman arrived.

. . .

¶ 42(j) Providing inmates in the Trustee program with civilian clothing that consisted of dark green uniforms, tennis shoes and t-shirts, *such that residents within the community such as Tammy Long would be unable to recognize an inmate, such as Crissman, as an escapee*.

. . .

¶ 51    . . . such persons, including the Plaintiffs' decedent, were clearly within the zone of danger should an inmate escape from the Jail. Such a relationship imposed an affirmative duty of care for the protection of this Plaintiffs' decedent, and *the obligation to make sure prisoners like Crissman did not cause harm or injury to those in the community while under the Jail's custody and control.*

. . .

¶ 53    At the time of Crissman's imprisonment, Defendant knew . . . that Crissman was *going through severe drug withdrawal, and as such it was foreseeable that he would take desperate measures to acquire drugs, including attempting to escape his confinement at the Jail and subsequently break and enter into nearby homes, doing harm to the residents therein.*

. . .

¶ 56    It was foreseeable that the Jail's actions in allowing prisoners to roam free outside, without supervision, *would place residents like Tammy Long at a great risk of harm.*

(emphasis added)

As demonstrated above, Crissman was placed on Trustee status, even though the Defendants had actual knowledge that he was "dope sick" and currently going through heroin withdrawals. It is foreseeable that a known and active drug user (who indicated to the Defendants that he used heroin daily, usually 2-4 bags, even leading up to his arrest) entrusted with outside, unsupervised access, would attempt by any means necessary to obtain drugs, including trying to escape and find refuge not only with persons in close proximity to the jail, but also and most importantly, with persons, whom Crissman personally knew, Terry Slagle and Tammy Long. Moreover, it is foreseeable that Crissman, who escaped on foot and knowing that the police were looking for him, would go to a near-by home to hide (i.e. Tammy Long's home) or find means to obtain drugs.

Moreover, Defendants had actual knowledge that Crissman had been in and out of the Jail for numerous parole violations, particularly failure to report to the probation office and abstain from drug/alcohol use. Several bench warrants were issued to have Crissman arrested for failing to comply with the terms of his parole. Furthermore, Crissman's parole officer made it known to the Defendants that the County's level of treatment was not effective for Crissman because he had continued to relapse and was not being treated properly for his heroin use. (App., Vol. II, p. A-29-32). Having actual knowledge of the above information, the Defendants knew or should have known that Crissman was a flight risk.

Here, the district court held that geographically speaking, the residents were too remote to be considered a subset of the general public. (App., Vol. I, p. A-15). However, courts have found a sufficient relationship where the plaintiffs were bound to a particular geographic area, time and scope. See *Reed v. Gardner*, 986 F.2d 1122 (7th Cir. 1993); *Estate of Pendelton v. Davis*, 2007 WL 1300743, *19-20 (M.D. Pa. 2007) (holding that motorists on a particular road or geographic area was sufficient to satisfy the relationship requirement under the state created danger test.) Citing *Reed*, and *Morse* at 913 (recognizing that the *Reed* plaintiffs established a sufficient relationship even though ". . . the act of placing a drunk driver at the wheel of the car did not create a danger to the [victims] specifically.").

In *Morse,* this Court cited favorably to *Reed v. Gardner*, 986 F.2d 1122 (7th Cir. 1993) which provided this Circuit guidance in expanding the third prong to include foreseeable, discrete class of plaintiffs. Many Circuits and district courts, including Pennsylvania and the Third Circuit, have since relied upon *Reed* when reviewing a claim under the "state created danger" test. See *Kneipp* at 1209.; *Rives v. City of Passaic*, 365 F.3d 181 (3d Cir. 2004); see also, *Estate of Pendelton* at *19-20 (M.D. Pa. 2007)(finding that local motorists who were killed in a head-on-collision by an inmate while on work release and known to have a suspended license and multiple DUI's, were foreseeable members of a discrete group (i.e. motorists and passengers traveling in the vicinity of the work release program.)(internal quotations omitted.)

In *Reed*, police officers arrested a driver of a vehicle and left behind an

intoxicated passenger, with the keys to the vehicle. See *Morse* at 913. See also, *Reed v. Gardner*, 986 F.2d 1122 (7th Cir. 1993) A few hours after the initial arrest, the passenger while driving the arrestee's vehicle, collided head on with the plaintiff's vehicle, killing the plaintiff's wife and pre-natal son, and injuring the plaintiff. *Id.* The only connection the plaintiffs had to the state actors and drunk driver was that they were members of a class of individuals who had randomly been traveling along the same highway.

The *Reed* court held that "the officers . . . initiated the state action, by arresting the [original driver] and removing her from the car. That state intervention created the dangerous condition, a drunk driver on the road." *Reed* at 1126.

Moreover, the court in *Reed* found that the defendant's lack of direct contact with the plaintiffs does not necessarily preclude this action against them. *Id.* at 1126-1127. Instead, the court held that "by removing a safe driver from the road and not taking steps to prevent a dangerous driver from taking the wheel, the defendants arguably changed a safe situation into a dangerous one." *Id.* at 1127. The court added, "***when the police create a specific danger, they need not know who in particular will be hurt. Some dangers are so evident, while their victims are so random, that state actors can be held accountable by any injured party.***" *Id.* (emphasis added).

Here, the district court mentions that the *Reed* court later clarifies that "liability was only allowed in <u>Reed</u> because the plaintiffs were in a small, defined group of

potential victims" and "threat of harm to other motorists was limited in both time and scope." (App., Vol. I, p. A-14). Here, the Defendants' actions of permitting Crissman outside, without supervision the morning of the incident, limited the time and scope of potential victims to those residents in close proximity to the Jail, at the time he escaped, including Tammy Long, whom Crissman knew lived nearby.

Here, from the time Crissman was permitted outside of the Jail to the time he escaped, entered Tammy's home and murdered her, was only a short period of time. Thus, the Defendants actions of first, placing Crissman in the Trustee program and then permitting him to be outside of the Jail without supervision, subjected residents in close proximity to the Jail and the area where Crissman fled, to potential and immediate threat of harm.

Similar to the foreseeable discrete class of plaintiffs in *Reed* (i.e. random motorists in the vicinity of the drunk driver), here residents, including Tammy Long, who live in the close vicinity to the Jail are a foreseeable, discrete class of plaintiffs for § 1983 purposes.

### b. The harm ultimately caused to Tammy Long was foreseeable and fairly direct.

This prong requires plaintiffs to plausibly plead that the harm was both "foreseeable and fairly direct." *Morse* at 908. A plaintiff adequately pleads the element of foreseeable harm by alleging 'an awareness on the part of the state actor that rises to [the] level of actual knowledge or an awareness of risk that is sufficiently concrete

to put the actors on notice of the harm.[5] Furthermore, to show that the defendants' conduct was "fairly direct" the test provides that the defendants' actions cannot be separated from the ultimate harm by a lengthy period of time and intervening actions." [6]

Plaintiffs' Complaint in this respect states the following:

> ¶ 14    . . . Crissman was a known drug user who also had a record of significant criminal behavior which included multiple instances of theft, criminal trespassing, ***breaking and entering***, driving under the influence, and use/possession of drugs and drug paraphernalia.
>
> . . .
>
> ¶ 15    Starting in 2003 . . . [o]n numerous occasions, Crissman violated the conditions of his parole.
>
> . . .
>
> ¶ 53    At the time of Crissman's imprisonment, Defendant knew or should have known that Crissman ***was going through severe drug withdrawal, and as such it was foreseeable that he would take desperate measures to acquire drugs . . .***

(emphasis added).

In *Kneipp*, the court held that the injuries to the decedent were foreseeable as result of the police allowing someone who was heavily intoxicated to walk home alone at night in the winter time. The court held that a reasonable trier of fact could conclude that in plaintiff's state of intoxication, she would be more likely to fall and injure herself if left unescorted than someone who was not inebriated. *Kneipp* at 1208.

---

[5] *Benedict, et. al, v. Southwestern Pennsylvania Human Resources, Inc., et. al.*, No. 2:14-cv-0678, 21-22 (W.D. Pa. Mar. 24, 2015).
[6] *Id.*

To reiterate, similar to the defendant's knowledge in *Kneipp* and *Reed*, the Defendants here had actual knowledge that Crissman was going through drug withdrawals. The Trustee program was only for inmates who were incarcerated for DUIs and Child Support payment violations. Placing an inmate, such as Crissman, who had a significant criminal history into the Trustee program, at a time when they actually knew he was going through heroin withdrawal, coupled with the lax security and "outside privileges" afforded with that status, demonstrates the disregard of a foreseeable risk that Crissman would take desperate measures to acquire drugs, including attempting to escape and subsequently break and enter nearby homes. Compl. ¶ 53.

While the Defendants argue that it was not foreseeable that Crissman would have committed such heinous crimes because he did not have a history of violence, this Court has held that "we have never held that to establish foreseeability, a plaintiff must allege that the person who caused the harm had a "history of violence." *Phillips* at 237. Even in light of this holding, Crissman did have a history, as discussed above, of violent criminal behavior. Therefore, analyzing the issue in a light most favorable to the Appellants, it cannot be said that Crissman had a record devoid of such a history.

Moreover, in *Reed*, it was the state's action of knowingly removing the sober driver and placing a drunk driver behind the wheel that turned a safe condition, into a dangerous condition and thereby rendering persons within close proximity foreseeable and vulnerable to the threatened harm posed by the defendant. Furthermore, the

court held that "[d]espite the two hour time lapse and the distance between the place of the [original driver's] arrest and the car accident, the events are *not* sufficiently attenuated to relieve the defendants of section 1983 liability." *Id.* (emphasis added).[7] Ultimately, the court held that the police officers' act "rendered the [plaintiffs] and other motorists on the Route 130 vulnerable to a dangerous driver."[8]

Likewise, the Defendants here knowingly and affirmatively created a dangerous condition for Tammy Long and the residents around the jail, and failed to take reasonable preventative steps to diffuse that danger. Thus, Tammy Long was an individual directly affected by the Defendants decisions. For these reasons, the Plaintiffs have plead sufficient facts as it relates to the foreseeable and fairly direct prong of the "state created danger" theory.

### c. The Defendants' acted with a degree of culpability that shocks the conscience.

In *Kneipp*, the court found that plaintiffs adduced sufficient evidence to raise a material issue as to whether the defendant acted in willful disregard for the decedent's safety. *Kneipp* at 1210. The plaintiff presented evidence regarding the decedent's level of intoxication and impairment by the defendant's admission that he knew she was intoxicated. *Id.* Here, the Plaintiffs have sufficiently plead, and the facts upon which

---

[7] Significantly, compared to *Reed*, the time elapsed between the state action and the injury was even shorter in this case.
[8] *Morse* at 913. See also, *Reed, supra.*

those averments are based, evidence that the requisite degree of culpability exists in

this matter. Plaintiffs' Complaint in this respect, states in pertinent part:

¶ 54    Crissman's escape was a direct result of the defendants' active and affirmative misuse of authority, as evidenced by the defective policies and conduct identified above which is incorporated herein. The Jail's deliberate and conscious decisions concerning said policies ***demonstrate deliberate intent and/or willful deliberate indifference to the residents of the community in which the Jail operated, to such a degree that it would shock the conscience of reasonably prudent citizens.***

. . .

¶ 55    The Jail's actions reflect a deliberate indifference and willful disregard for the safety of residents living close to the Jail, including Plaintiffs' decedent.

. . .

¶ 59    . . . which states in pertinent part:

a.    Approving Crissman for Trustee status less than a week into his confinement, despite an obvious drug problem;

. . .

b.    Approving Crissman for the Trustee program despite actual knowledge and evidence that he was going through drug withdrawal . . .

Moreover, in *Reed*, the court held that the defendants engaged in actionable

conduct by removing a sober driver and placing a drunk driver behind the wheel.[9]

Here, the Defendants' initiated the culpable state action in a number of ways, most

notably by conferring Trustee status, with all of its special privileges, and lack of

---

[9] Although the *Reed* court found the defendant's action not as shocking as the defendants' actions in *Nishiyama v. Dickson County*, 814 F.2d 277 (6th Cir. 1987) the court, nevertheless, found the defendants in *Reed* to have engaged in reckless conduct.

supervision, to someone who, by his own history of crimes and drug use, as well as his own statements to Defendants regarding his heroin withdrawal, was not fit for such a "trusted status." Such conduct as plead, evidences a conscious disregard of a serious risk on the part of the Defendants.

### d. The Defendants affirmatively used their authority in a way that created a danger to the citizens in close proximity to Armstrong County Jail, or that rendered the citizens more vulnerable to danger than had the state not acted at all.

Defendants' Brief does not present any concrete allegations or even plausible inferences that the Plaintiffs have failed to plead sufficient facts in their Complaint as to the fourth prong of the "state created danger" theory. The Defendants have the burden of showing that no claim has been presented. *Hedges* at 750.

As a precautionary measure only, Plaintiffs will argue that they have plead in their Complaint sufficient facts that, with inferences viewed most favorably to the Plaintiffs, would establish that the Defendants affirmatively used their authority in a way that created a danger to Tammy Long, rendering her more vulnerable to danger than had the state not acted at all.

In *Reed*, the court found that the officers initiated the state action, by arresting the driver and removing her from the car. The state intervention created the dangerous condition, a drunk driver on the road. *Reed* at 1126. In other words, the police officers created a danger to those on the roadways and/or rendered the motorists more vulnerable to the danger than had the state not acted at all.

Additionally, there were various other actions undertaken by the Defendants here which rendered citizens like Tammy Long more vulnerable than had it not acted. As noted above, the Jail's affirmative act of providing inmates in the Trustee program with civilian clothing, instead of a clearly labeled prison uniform rendered Tammy Long more vulnerable and susceptible to harm in this case. Those actions facilitated Crissman's acts in a way that would not have been possible had the Jail not acted in this regard.

Additionally, it was also plead in this case that the Jail, by having the Trustee program and in being located in and among a residential neighborhood, made implied assurances to those in the surrounding community that it had properly vetted and screened the individuals who would be given the special privileges associated with Trustee status. This is so, especially in light of the fact that those individuals were all convicted of some crime, and were by law sentenced to be confined in a prison setting. It is certainly reasonable and plausible to expect, therefore, that residents who lived so close to the jail would proceed with the assurance that individuals in the program were conferred such status in a way that would not present a heightened risk to their community. In this respect, Plaintiffs Complaint states as follows:

> ¶ 23    inmates with Trustee status were representatives of the Jail itself . . . **with the understanding that they had been properly vetted and screened in such manner as to not present a heightened risk . . .** those members of the community such as Tammy Long, who resided so close to the Jail.

In *Kneipp*, the police officers did ***not even vocalize*** to the husband that they

would take care of his wife and ensure that she would make it home safe. Instead, the court found a voluntary "assumption" of responsibility by the state actor in that case, noting:

> ". . . [b]y voluntarily assuming responsibility for her [decedent's] protection when they told her husband he could leave, it was alleged that the officers affirmatively created danger and increased the risk that the [decedent] might be injured when they later abandoned her. It was further alleged that the police conduct made the [decedent] more vulnerable . . . [by] . . . intervening with the efforts of her husband to assist his wife safely."

*Kneipp* at 1203.

For all of these reasons, Plaintiffs have properly plead and satisfied the fourth prong of the "state created danger" theory.

## B. THE PLAINTIFFS' COMPLAINT ESTABLISHES A CLAIM FOR CRISSMAN'S ACTIONS AS A "STATE ACTOR"

In addition to the theories set forth and enumerated above, Plaintiffs' Complaint sets forth an additional theory of liability. To wit: that Robert Crissman was, based on his special status of "trusty", a "state actor." In this respect, the Plaintiff has plead that Crissman was given special rights and privileges conferred upon him directly by the Defendants, and as such, was acting with the imprimatur and authority of the state. In this regard the Complaint states the following:

> ¶58    Furthermore, the conferring of trusty status upon Crisssman resulted in Crissman's actions being imputed to the jail. By giving such special status to Crissman, the jail was affirmatively asserting

that it entrusted Crissman to safely and responsibly carry out his duties as a "**trusty *and representative of the jail itself***".

## 1. Plaintiff's claim satisfies the "Public Function" Test.

Whether a constitutional violation results from state action is a question that has been subject to multiple tests and analysis by both the US Supreme Court as well as the Third Circuit. See *Lugar v. Edmondson Oil Co.*, 457 U.S. 922 (1982).

There is no single analysis applicable to determine the presence of state action in a § 1983 case. It is a factually intensive analysis to be decided by considering all of the surrounding circumstances. *Lugar* at 939; See also, *Brandon v. University of Pittsburgh*, 477 F.2d 1, 6 (3d Cir. 1973); *Kronmuller v. West End Fire Co.*, 123 F.R.D. 170, 173 (E.D. Pa. 1988).

The touchstone of the "public function" test is one that involves a fact based, historical exploration of the function at issue. For example, in *Edmundson v. Leesville Concrete*, 500 U.S. 614, 617 (1991) the Supreme Court did find that a private actor (the defendant in a private lawsuit) could be deemed a "state actor" under §1983 by using a preemptory challenge in a civil jury proceeding in a discriminatory way. This is so, the court held, because the use of a preemptory challenge by a private party involved *the performance of a traditional function of government*.[10]

---

[10] As opposed to *Mark v. Borough of Hatboro* 51 F.3d 1137 (3d Cir. 1995), finding that a volunteer fire fighter who was not properly vetted, and who had committed arson was not a state actor for § 1983 purposes.; See also, *Rendell-Baker et al. v. Kohn et*

## **CONCLUSION**

For the reasons stated above, Appellants respectfully request this Honorable

Court to deny Appellee's Motion to Dismiss pursuant to Fed. R. Civ. P. 12(b)(6).

Respectfully submitted,

By: /s/ George M. Kontos
George M. Kontos, Esquire
gkontos@kontosmengine.com

By: /s/ Claire McGee
Claire McGee, Esquire
cmcgee@kontosmengine.com

KONTOS MENGINE LAW GROUP
603 Stanwix Street
Two Gateway Center, Suite 1228
Pittsburgh, PA 15219
*Attorneys for Plaintiffs-Appellants*

---

*al., 457 U.S. 830, 842 (1982)*(holding the that educational services to trouble youths, was not "traditionally and exclusively the prerogative of the state". Thus, private actors who were responsible for violations of the Plaintiff's civil rights in such a situation were not found to be state actors.); See also, *Blum v. Yaretsky et. al.*, 457 U.S. 991,1012A (1982)(holding that the day to day administration of a Nursing Home was found not to encompass "the kind of decisions traditionally and exclusively made by the sovereign or on behalf of the public.)

## CERTIFICATE OF SERVICE

We, George M. Kontos, Esquire and Claire McGee, Esquire, hereby certify that a true and correct copy of the foregoing Brief of Appellant and Appendix-Volume I was filed on September 23, 2016 with the Clerk of Court using the CM/ECF system and thereby becoming immediately available to the following:

THE MACMAIN LAW GROUP, LLC
David J. MacMain
101 Lindenwood Drive, Suite 160
Malvern, PA 19355
*Attorney for the Defendants-Appellees, Armstrong County d/b/a*
*Armstrong County Jail and David Hogue*

By: /s/ George M. Kontos
George M. Kontos, Esquire
gkontos@kontosmengine.com

By: /s/ Claire McGee
Claire McGee, Esquire
cmcgee@kontosmengine.com

KONTOS MENGINE LAW GROUP
603 Stanwix Street
Two Gateway Center, Suite 1228
Pittsburgh, PA 15219
*Attorneys for Plaintiffs-Appellants*

## <u>CERTIFICATION OF BAR MEMBERSHIP PURSUANT TO 3d Cir. L.A.R 46.1(e)</u>

The undersigned hereby certifies that at least one of the attorneys whose names appear on the brief for Appellant is a member of the bar of the Third Circuit Court of Appeals.

Respectfully submitted,

/s/ George M. Kontos
George M. Kontos, Esquire
Pa I.D.: 62712

## **CERTIFICATE OF COMPLIANCE WITH RULE 32(a)**

Certificate of Compliance with Type-Volume Limitation, Type Face Requirements, and Type Style Requirements

1. This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because this brief contains 7728 words, excluding parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

2. This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Office 2013 with 14 font size and Garamond font style.

Respectfully submitted,

/s/ George M. Kontos
George M. Kontos, Esquire
Pa I.D.: 62712

## **CERTIFICATION OF DUPLICATION**

I hereby certify that the Brief and Appendix-Volume I and Joint Appendix

Volume II that were e-filed with the Court is an exact duplicate of the hard copy of

the brief that was physically filed with the Court.


Respectfully submitted,

/s/ George M. Kontos
George M. Kontos, Esquire
Pa I.D.: 62712

## <u>CERTIFICATION OF VIRUS CHECK</u>

I hereby certify that a virus check was performed with Symantec EndPoint

Protection version 12.1.6 MP5 and no viruses were found.

Respectfully submitted,

/s/ George M. Kontos
George M. Kontos, Esquire
Pa I.D.: 62712

## **REQUEST FOR ORAL ARGUMENT**

Appellants respectfully request, pursuant to L.A.R. 34.0, that this Court allow oral argument.

Respectfully submitted,

/s/ George M. Kontos
George M. Kontos, Esquire
Pa I.D.: 62712

## CERTIFICATE OF SERVICE

We, George M. Kontos, Esquire and Claire McGee, Esquire, hereby certify that a true and correct copy of the foregoing Brief of Appellant and Appendix-Volume I was filed on September 23, 2016 with the Clerk of Court using the CM/ECF system and thereby becoming immediately available to the following:

THE MACMAIN LAW GROUP, LLC
David J. MacMain
101 Lindenwood Drive, Suite 160
Malvern, PA 19355
*Attorney for the Defendants-Appellees, Armstrong County d/b/a
Armstrong County Jail and David Hogue*

By: /s/ George M. Kontos
George M. Kontos, Esquire
gkontos@kontosmengine.com

By: /s/ Claire McGee
Claire McGee, Esquire
cmcgee@kontosmengine.com

KONTOS MENGINE LAW GROUP
603 Stanwix Street
Two Gateway Center, Suite 1228
Pittsburgh, PA 15219
*Attorneys for Plaintiffs-Appellants*