# IN THE UNITED STATES COURT OF APPEALS
# FOR THE THIRD CIRCUIT

---

No.: 16-3027

---

TARA L. LONG and TODD J. LONG,
Administrators of the Estate of TAMMY E. LONG, Deceased,

Appellants,

v.

ARMSTRON COUNTY d/b/a ARMSTRONG COUNTY JAIL,
and DAVID HOGUE,

Appellees.

---

## JOINT APPENDIX—VOLUME II (p.A-26 to A-53)

---

On Appeal from an Order of the Honorable Mark R. Hornak, Entered
May 31, 2016 in the United States District Court
for the Western District of Pennsylvania

---

### KONTOS MENGINE LAW GROUP

GEORGE M. KONTOS, ESQUIRE
CLAIRE MCGEE, ESQUIRE
603 Stanwix Street
Two Gateway Center, Suite 1228
Pittsburgh, Pennsylvania 15222
(412) 709-6162

DATED: September 23, 2016          COUNSEL FOR APPELLANT

## TABLE OF CONTENTS-APPENDIX VOLUME II

DISTRICT ATTORNEY'S REPORT ……………………...……………………………….. A-26

PLAINTIFFS' COMPLAINT …………………………………………………………… A-33

CERTIFICATE OF SERVICE………………………………………………………….A-53

# ARMSTRONG COUNTY DISTRICT ATTORNEY'S REPORT

## INTO THE ESCAPE OF INMATE ROBERT CRISSMAN

### Investigation, Findings and Recommendations

Prepared by:
Assistant District Attorney Kathleen M. Charlton
with investigation conducted by Detectives
Paul Rearick, Franklin Roofner, Robin Davis and
Charles Edwards.

I.     **REPORT SUMMARY**

The Armstrong County District Attorney's office opened this investigation into the events and circumstances surrounding inmate Robert Edward Crissman's escape from the Armstrong County jail on the morning of July 30, 2015. On July 30, 2015, inmate Robert Edward Crissman (hereinafter "Crissman") was assigned tray duty with two other inmates. Crissman is accused by criminal complaint of escaping from the jail and subsequently killing Tammy Long at her residence. Ms. Long's residence is located at █████████ ████████████less than a quarter of a mile from the Armstrong County Jail.

The investigation included the facts of Crissman's incarceration, what occurred the morning of July 30, 2015, as well as policies and procedures implemented at the Armstrong County jail during the period of time in question. Assistant District Attorney Katie Charlton was appointed to head the investigation, with assistance from Armstrong County Chief Detective Paul Rearick, and County Detectives Franklin Roofner, Robin Davis, and Charles Edwards. ADA Charlton and the detectives met and briefed as to the direction of the investigation and duties were assigned to all detectives. Interviews of witnesses took place at both the Armstrong County Jail and at private meeting rooms at the Armstrong County Courthouse. Approximately 30 interviews were conducted by the detectives, including interviews of Crissman's cellmates at the Armstrong County Jail, inmates present at the time of Crissman's escape, Crissman's probation officer, the Chief Probation Officer, two County Commissioners, the Armstrong County Public Works director, Corrections Officers on duty the morning of July 30, 2015, other Corrections Officers familiar with Crissman, counselors at the jail, the work release coordinator, the Deputy Warden, and the Warden.

In addition to interviews, site visits were made to the jail to view Crissman's housing unit, his cell, the path of travel taken the morning in question, and equipment at the jail. Surveillance footage from the jail was gathered and reviewed, as well as incident reports, head counts, movement logs, work release request slips, photographs and diagrams, call logs, policy and procedure manuals, training materials for corrections officers, an inmate handbook, and Crissman's inmate file. Additionally, Crissman's criminal history and court documents reflecting the same were obtained and reviewed. At the instruction of ADA Charlton, Detectives spoke with other jails in counties similarly situated to Armstrong County to inquire into whether other jails had similar inmate work release/"trustee[1]" programs and what guidelines other counties use.

Based on the aforementioned, the following report has been compiled.

A-28

---

[1]. The author of this report notes that there has been debate as to whether the correct term is "trustee" or "trusty." As the Armstrong County Jail specifically refers to these individuals as "trustee," in documentation, this report will use the term "trustee."

2

## II.    FACTUAL FINDINGS

### A. Crissman's Criminal History

Crissman has a lengthy, if unremarkable, prior criminal record. His criminal record reflects his apparent substance abuse issues and a system that made numerous attempts to treat these issues, but a pattern of failing to comply with conditions placed upon him. His criminal history dates back to charges for misdemeanor receiving stolen property and use/possession of drug paraphernalia in 2003 at Armstrong County case number CP-03-CR-0000470-2003 and use/possession of drug paraphernalia and disorderly conduct charges at Armstrong County case number CP-03-CR-0000636-2003.  The charges at case 470-2003 were dismissed after Crissman was admitted to and completed the ARD program. He pleaded guilty to the disorderly conduct charges at case 636-2003. A DUI conviction followed in 2004, for which Crissman was sentenced to a term of incarceration of 48 hours to two years less a day. With regard to this sentence, Crissman was committed to the Armstrong County Jail on 8-27-2004 and was paroled on 8-29-2004.

In 2006, Crissman was committed to the Armstrong County Jail on 5-24-2006 for a violation of probation stemming from the 2004 case. Jail records indicate that the reason for the probation violation was "failure to abstain from use of a controlled substance." He was released on 5-31-2006. At Armstrong County case number CP-03-CR-0000419-2006, Crissman was charged with possession of a controlled substance and use/possession of paraphernalia. He pleaded guilty to use/possession of paraphernalia and was sentenced to a term of six months probation.

In 2008, Crissman was charged at Armstrong County case number CP-03-CR0000555-2008 with possession of a small amount of marijuana, use/possession of drug paraphernalia,

3

DUI for being under the influence of a controlled substance, and related summary driving offenses. Crissman pleaded guilty on 12-5-2008 to a DUI and was sentenced on 1-27-2009 to 90 days to 5 years in the Armstrong County Jail. He was committed to the jail on 1-27-2009 and was paroled to electronic monitoring on 2-10-09.

Two years later, on 6-21-2011, Crissman was charged with misdemeanor theft. It appears that these charges were dismissed pursuant to Pennsylvania Criminal Rule of Procedure 586.

On 7-11-2011 Crissman was committed to the Armstrong County Jail at case number 555-2008 for a parole violation for being charged criminally in a new case. He was committed on the violation on 7-12-2011 and was released to ARC Manor on 1-9-2012, after spending approximately six months in jail. The new case was filed at Armstrong County case number CP-03-CR-0000477-2011 and Crissman was charged with criminal trespass (breaking into a structure), misdemeanor theft and misdemeanor receiving stolen property. Crissman pleaded guilty to felony criminal trespass and misdemeanor theft and was sentenced on 12-27-2011 to incarceration of 175 days to two years less a day.

On 3-8-2012, Crissman pleaded guilty to one count of use/possession of drug paraphernalia at Armstrong County case number CP-03-CR-0652-2011 and was sentenced to serve 6 months of probation. Case number 0555-2008 was again revoked on 1-3-2012 as a result of the new criminal charges at case 0652-2011. Crissman was reparoled from the Armstrong County Jail in connection with case 0555-2008 on 1-9-2012.

On 7-28-2012, Crissman was charged with misdemeanor theft at case number 0721-2012 and on 7-31-2012, with two counts of misdemeanor theft at case number 0722-2012. He pleaded guilty to one charge of theft at case number 0721-2012 and was sentenced on 2-7-13 to one year of probation.

4

On 7-30-2012, a bench warrant was issued for Crissman for failing to successfully complete his court ordered drug and alcohol treatment. He was apprehended and placed in the Armstrong County jail on 8-2-2012. On 3-5-2013, Crissman was revoked for the second time at case 0555-2008 for failing to obey all laws, abstain from alcohol and/or controlled substances, report as directed, report a change of address, complete drug/alcohol treatment and abide by the probation department's prescription drug use policy. He was reparoled on 3-13-13, after serving approximately seven and a half months in jail.

Crissman was again detained in the Armstrong County Jail on 10-17-2013 for failing to report to the probation department as directed and for failure to abstain from the use of controlled substances. He was released into a drug/alcohol treatment facility (ARC Manor) on 11-21-13, when the detainer was lifted.

He was again detained in the Armstrong County jail on 5-6-2014 for failure to refrain from the use of controlled substances. He was again released into a drug/alcohol treatment facility (ARC Manor) on 6-3-2014, when the detainer was lifted.

On 7-28-2014, Crissman was charged with misdemeanor theft, receiving stolen property and criminal attempt at case number 875-2014. He pleaded guilty to misdemeanor theft and was sentenced on 4-9-2015 to six months probation.

A bench warrant was issued on 7-31-2014 for Crissman for failing to report to probation as instructed. He was apprehended by Marienville State Police on 8-26-2014 and placed in the Clarion County Jail. He was transported from the Clarion County Jail and placed in the Armstrong County Jail by probation on 8-26-2014.

His parole for case number 555-2008 was revoked for a third time on 9-30-2014 for failing to maintain a schedule of payments, failure to successfully complete drug/alcohol

5

A-31

treatment, failure to refrain from the use of controlled substances, failure to report to the

probation office as directed and failure to report a change of address. At a hearing on the

revocation, Crissman's probation officer, recommended that Crissman be committed to a state

penitentiary and that his case be transferred to the state system. The probation officer didn't

believe that the county programs were working for Crissman and that Crissman had been

ordered into treatment at numerous drug and alcohol treatment facilities, that Crissman

continued to fail to comply with the terms of his parole, and that he continually failed to make

scheduled appointments with probation. The probation officer believed that the county level

was not effective for Crissman. The Court then ordered Crissman to participate in a vivitrol

treatment program, to enroll into a drug and alcohol treatment facility immediately, to obtain

employment, and further to authorize his doctor to release medical records to the probation

department. He was reparoled via order of court on 10-1-2014 to a treatment facility.

Crissman would later tell one of his cellmates that at this revocation hearing, the Court

indicated to Crissman that this was Crissman's last chance and that the Court would "max"

him out if Crissman came before the Court again.

During his periods of incarceration throughout this history, Crissman was granted

"trustee" status at the Armstrong County Jail three times: from 11/08/2013 to his release of

11/21/2013; 05-12-2014 to his release of 06/03/2014, and 08/28/2014 to his release of

10/01/2014. He worked as a trustee during these time periods without incident and by all

accounts was cooperative and liked by the Corrections Officers in charge of him.

6

## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

TARA L. LONG and TODD J. LONG, :
Administrators of the Estate of :
TAMMY E. LONG, Deceased, :
                           :    Civil Action No._____
          Plaintiffs, :
                           :
           v. :    **COMPLAINT IN CIVIL ACTION**
                           :
ARMSTRONG COUNTY d/b/a :
ARMSTRONG COUNTY JAIL and :
DAVID HOGUE, :
                           :
          Defendants. :    Filed on behalf of: Plaintiffs
                           :
                           :    Counsel of Record for this Party:
                           :
                           :    George M. Kontos, Esquire
                           :    PA I.D. No. 62712
                           :    Katie A. Killion, Esquire
                           :    PA I.D. No. 205203
                           :    KONTOS MENGINE LAW GROUP
                           :    603 Stanwix Street
                           :    Two Gateway Center, Suite 1228
                           :    Pittsburgh, PA 15222
                           :    (412) 709-6162
                           :    (412) 904-3820/facsimile
                           :    gkontos@kontosmengine.com
                               kkillion@kontosmengine.com

**JURY TRIAL DEMANDED**

A-33

## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

TARA L. LONG and TODD J. LONG,
Administrators of the Estate of
TAMMY E. LONG, Deceased
                  Plaintiffs,

        v.

ARMSTRONG COUNTY d/b/a
ARMSTRONG COUNTY JAIL and
DAVID HOGUE,

        Defendants.

Civil Action No. _____

### COMPLAINT IN CIVIL ACTION

AND NOW come the Plaintiffs, TARA L. LONG and TODD J. LONG, Administrators of

the Estate of TAMMY E. LONG, deceased, by and through their attorneys, George M. Kontos,

Esquire, Katie A. Killion, Esquire, and KONTOS MENGINE LAW GROUP, and file the

following Complaint in Civil Action:

### Parties and Scope

1.     Plaintiff, Tara L. Long, is an adult individual who has been appointed Co-

Administrator of the Estate of Tammy E. Long, Deceased (hereinafter sometimes referred to as

"Tammy" and/or "Tammy Long") by the Register of Wills of Armstrong County, Pennsylvania.

She has an address at 116 Rebecca Street, Kittanning, PA 16201.

2.     Plaintiff, Todd J. Long, is an adult individual who has been appointed Co-

Administrator of the Estate of Tammy E. Long, deceased, by the Register of Wills of Armstrong

County, Pennsylvania. He has an address at 1586 Johnston Avenue, Kittanning, PA 16201.

A-34

3.      Plaintiffs' decedent, Tammy E. Long, was born on May 14, 1960 and died on July 30, 2015. She had an address at 110 Rayburn Rd., Kittanning, PA 16201.

4.      Defendant, Armstrong County, is a municipality and exists pursuant to the laws of the Commonwealth of Pennsylvania.

5.      Upon information and belief, Armstrong County owned, possessed, was in control of, and/or was responsible for the operation of the Armstrong County Jail (hereinafter sometimes referred to as the "Jail"). The Jail is located at 171 Staleys Courts Rd., Kittanning, PA 16201.

6.      The Jail is located among a residential community. Tammy Long resided within a quarter mile of the Jail, being able to see the Jail from the front porch of her home.

7.      At all relevant times hereto, and upon information and belief, Plaintiffs aver that Defendant David Hogue was an agent of Armstrong County and the Armstrong County Jail, acting in the course and scope of his employment, and was engaged in the performance of his duties as the Warden for the Armstrong County Jail. David Hogue, as Warden, was responsible for the implementation and promulgation of the policies of said Jail, and was responsible for the training, conduct, and supervision of all Jail personnel.

## Jurisdiction and Venue

8.      Jurisdiction is proper in the United States District Court for the Western District of Pennsylvania pursuant to 28 USC § 1331 (Federal Question).

9.      The right to bring these actions is conferred upon the Plaintiffs by virtue of the operation of the following laws:

a.  Provisions of the Wrongful Death Act, 42 Pa. C.S.A. §8301, and amendments thereto;

b.  Provisions of the Survival Act, 42 Pa. C.S.A. §8302, and amendments thereto;

c.  Provisions under 42 U.S.C. § 1983 et al. for deprivation of rights, and

2

A-35

amendments thereto; and,

d. All other applicable Wrongful Death Acts, Survival Acts, Fiduciary Acts, Statutes and Pennsylvania Rules of Civil Procedure.

10. This action is brought to recover damages for and on behalf of:

a. Tara Long, daughter; and,

b. Todd Long, Son.

11. Plaintiffs' decedent did not previously bring an action against the Defendants for damages during her life for the injuries which ultimately resulted in her death.

12. No other action for wrongful death of Plaintiffs' decedent or for damages for the injuries causing Plaintiffs' decedent's death have been commenced against Defendants other than this action.

13. At all relevant times hereto, the Defendants acted through their agents and employees acting within the course and scope of their agency and/or employment.

### Robert Crissman's Incarceration

14. Robert Edward Crissman, Jr. (hereinafter, "Crissman") was a known drug user who also had record of significant criminal behavior which included multiple instances of theft, criminal trespassing, breaking and entering, driving under the influence, and use/possession of drugs and drug paraphernalia.

15. Starting in 2003, Crissman was arrested numerous times for the above-stated criminal actions. He served several lengthy stints at the Armstrong County Jail and was often sentenced to probationary periods. On numerous occasions, Crissman violated the conditions of his parole. Many of his arrests were related to hard drug use, all of which were known to Defendants.

16. Crissman was confined to the Armstrong County Jail on July 23, 2015 for violating

3

A-36

his parole stemming from an earlier arrest and criminal disposition.

17.    Despite the fact that Crissman had a long standing history of drug abuse, he was not drug tested at any time during his incarceration.

### The Jail's Trustee Program

18.    The Armstrong County Jail utilized a type of inmate work release program whereby inmates were assigned tasks, such as laundry, cleaning and maintaining the exterior of the facility. Such inmates were often referred to as Trustees and are thus referred to as such in this Complaint.

19.    Trustees were housed in special units and given outside privileges, which allowed workers the freedom to be outside of the Jail's confinements.

20.    Originally, the Trustee program was to be limited to only those inmates who were incarcerated for DUIs or Child Support payment violations.

21.    Trustees working outside of the Jail, even on Jail premises, did not have a guard from the Jail accompanying them. Observation of the inmates' actions in these instances was merely done via security camera.

22.    One of the jobs a Trustee could hold at the Jail was "tray duty." Trustees who were assigned tray duty were to proceed through the kitchen, and then outside to wait for a van to deliver meals on trays. These Trustees were typically not escorted by a corrections officer. Once outside, Trustees would often prop an exterior door open with a large brick while they waited for a van to deliver meals.

23.    At all times relevant hereto, inmates with Trustee status were representatives of the Jail itself, as the Jail had direct control over their actions and interaction with the community at large. As such, Trustees, like Crissman, acted with the special privileges and rights conferred upon them by the Jail, with the understanding that they had been properly vetted and screened in such manner as to not present a heightened risk to the community at large, and more specifically, to

4

A-37

those members of the community such as Tammy Long, who resided so close to the Jail.

24.     Crissman was granted Trustee status on July 29, 2015 without going through any probationary period beforehand, nor having any meaningful screening performed by the Jail.

25.     Crissman then made a request that he be assigned to tray duty. On July 30, 2015 Crissman's request was granted.

26.     During the time period immediately proceeding his placement into the Trustee program, it was made known to the Jail that Crissman had used heroin shortly before his incarceration, and that he was suffering the effects of Heroin withdrawal. Such information was relayed by Crissman directly to Jail personnel, and at other times, these facts were obvious, as Crissman was exhibiting obvious symptoms of drug withdrawal (aka "dope sickness") as described by fellow inmates. These signs included but were not limited to; Crissman having uncontrolled and accidental bowl movements in his cell; vomiting several times in his cell; and otherwise appearing to be lethargic and not well.

27.     Despite such obvious signs of withdrawal, and all that was known by the Jail about Crissman's criminal history and background, Crissman was not provided any type of meaningful addiction treatment. Instead, the Jail conferred special status upon him that allowed him unsupervised access to areas outside of the Jails confines, as described above.

## Crissman Escapes

28.     On July 30, 2015, and as part of his tray duty responsibilities, Crissman and two other Trustee inmates were permitted to walk down a hall, through seven sets of doors which were remotely opened from a central location, to the outside of the Jail, with no direct supervision.

29.     The only monitoring in existence was at "Central Control," which consisted of merely one officer observing 120 camera monitors during the shift in question. The officer, would remotely open the doors to allow the inmates to pass through.

30.    While waiting for the van to arrive, Crissman and the other two inmates were outside of the Jail's walls with no direct supervision.

31.    As the food van arrived, Crissman ran towards the gun range and eventually into woods that bordered the prison, easily escaping the Jail.

32.    One of the other Trustees notified a correctional officer that Crissman had fled. Subsequently, the correctional officer radioed to Central Control, who then called the lieutenant, who then tried to call the Warden three separate times, all to no avail.

33.    By the time the lieutenant of the Jail contacted 911, nearly fifteen minutes had passed since Crissman's escape. There was no warning siren to alert the nearby residents that a potentially dangerous inmate had escaped.

34.    While the Kittanning Police were being contacted by the Jail, Crissman ran to the residence of an acquaintance, Terry Slagle.  Mr. Slagle lived with Tammy Long.  She was inside when Crissman arrived.

35.    Mr. Slagle and Ms. Long were unaware that Crissman had escaped from the Jail at this time, as no siren or other warning had yet been communicated to the residents living near the Jail.

36.    At approximately 7:20 a.m., Mr. Slagle left the residence to go to work. Thereafter, Tammy Long agreed to give Crissman a ride into Kittanning.

37.    A short period of time thereafter, Tammy was beaten and strangled to death by Crissman, in her home.

38.    At around 2:30 p.m., the Kittanning police received a call from Mr. Slagle who informed them that he had come home to find Tammy.  Crissman was no longer there.

39.    Eventually, on July 31, 2015 around 7:30 a.m., the Kittanning police were able to track, find, and capture Crissman after a high speed car chase. He has been charged with the

6

murder of Tammy Long and is awaiting trial.

### The District Attorney's Report

40.    In response to the events set forth above, the Armstrong County District Attorney's office initiated an investigation into the Jail's procedures and policies, as they related to Crissman's escape and Tammy Long's death.

41.    On September 29, 2015, the Armstrong County District Attorney's office released a report revealing the findings of their investigation (the "D.A. Report"). Said report was prepared by the Assistant District Attorney, Kathleen M. Charlton.

42.    The D.A. Report details the affirmative misuse of authority by the Defendants, all of which created an opportunity that otherwise would not have existed for Crissman's crimes to have occurred. These misuses relate to the deficient procedures, policies and customs utilized at the Jail, including, but not limited to:

   a.  Approving Crissman for Trustee status less than a week into his confinement, despite an obvious drug problem;

   b.  Approving Crissman for the Trustee program, despite actual knowledge and evidence that he was going through drug withdrawal;

   c.  Approving Crissman for the Trustee program without first conducting a drug test;

   d.  Placing inmates on lockdown without first having them commit to a 72-hour probation;

   e.  Having in place a process for approving prisoners for Trustee status that did not consider factors such as an extensive criminal history and a history of non-compliance related to substance abuse issues;

   f.  Having deficient policies relating to tray duty;

   g.  Giving inmates on tray duty the authority and permission to prop open an outside door;

   h.  Giving prisoners from the work release unit the authority to volunteer

7

and be accepted for tray duty;

i. Authorizing or permitting inmates to be outside without supervision or monitoring;

j. Providing inmates in the Trustee program with civilian clothing that consisted of dark green uniforms, tennis shoes and t-shirts, such that residents within the community such as Tammy Long would be unable to recognize an inmate, such as Crissman, as an escapee;

k. Utilizing a "walkaway" escape policy that failed to notify the public and emergency services of a prison escapee within a short period of time;

l. Having in place a policy of lax training, or in many instances, no training regarding the supervision of inmates at the Jail;

m. Having in place a policy of lax security and supervision to such a degree that it allowed Crissman a clear opportunity to simply "run-off" and easily escape the confinement of the Jail; and,

n. Operating a Jail that was understaffed.

43. The D.A. Report also indicated that the Jail lacked a fence and that there was no warning system to notify the public of escaped inmates, despite the fact that the Jail itself is located in a residential area.

44. Furthermore, the D.A. Report noted that 911 was not even notified of the Jail escape until over ten minutes after the escape occurred.

45. The D.A. Report noted, not surprisingly, that based on the aforementioned policies, the Armstrong County Jail was a place inmates "want[ed] to go."

### CSI Report

46. In reaction to the incident described above, Armstrong County hired a consulting firm, CSI Corporate Security and Investigations, to investigate whether or not the incident was preventable and to also review the policies and procedures of the Jail.

47. The report containing the results of the investigation was finished and dated September 11, 2015 (hereinafter referred to as the "CSI Report"). Much like the D.A. Report,

the consulting firm found numerous issues concerning how prisoners were handled and how officers conducted themselves.

    18.    The misuse of the Jail's authority detailed in the CSI Report include, but was not limited to, the following:

    a. Assigning Crissman to the work release unit without having adequate intelligence information on him;

    b. Training records were virtually non-existent, and to the extent they existed, there was a noticeable lack of clarity, organization and consistency;

    c. Having an escape plan that lacked a "pursuit team" to track down escaped prisoners;

    d. Having an escape plan that did not have escape packets to give to local and state police in the event of an inmate escape;

    e. Having emergency procedures in place that were vague and complicated;

    f. Having emergency procedures in place in the event that did not require calling 911 immediately;

    g. Having in place a policy of training for Jail employees which did not take into account the recognition of signs or symptoms of intoxication;

    h. Having a Warden who was supposed to approve inmates for the work release, but who instead delegated this decision;

    i. Allowing inmates to work outside of the Jail walls without officer supervision; and,

    j. Having in place policies that would allow the corrections officer in control of watching the Jail's video monitors to "nod off" during the critical time of Crissman's escape.

    19.    The CSI Report also recognized a general complacency and lack of discipline that existed among Jail employees, supervisors, and inmates. The fact that the corrections officer in control of watching the video monitors "nodded off" during the critical time that Crissman escaped is emblematic of such complacency.

9

COUNT I – 42 U.S.C. § 1983
## Tara L. Long and Todd J. Long, Administrators of the Estate of Tammy E. Long -vs- Armstrong County d/b/a Armstrong County Jail
### (Wrongful Death)

50.     Plaintiffs incorporate by reference all proceeding paragraphs as though the same were more fully set forth at length herein.

51.     At all times relevant hereto, the Jail, acting under the color of law, had a special relationship with the members of the surrounding community in that such persons, including the Plaintiffs' decedent, were clearly within the zone of danger should an inmate escape from the Jail. Such a relationship imposed an affirmative duty of care for the protection of this Plaintiffs' decedent, and the obligation to make sure prisoners like Crissman did not cause harm or injury to those in the community while under the Jail's custody and control.

52.     By taking Crissman into their custody, the Jail affirmatively took responsibility for the actions of Crissman by accepting the responsibility to restrict his freedoms and effectively removing him from society.

53.     At the time of Crissman's imprisonment, Defendant knew or should have known that Crissman was going through severe drug withdrawal, and as such it was foreseeable that he would take desperate measures to acquire drugs, including attempting to escape his confinement at the Jail and subsequently break and enter into nearby homes, doing harm to the residents therein.

54.     Crissman's escape was a direct result of the Defendants' active and affirmative misuse of authority, as evidenced by the defective policies and conduct identified above which is incorporated herein. The Jail's deliberate and conscious decisions concerning said policies demonstrate deliberate intent and/or willful deliberate indifference to the residents of the

10

community in which the Jail operated, to such a degree that it would shock the conscience of reasonably prudent citizens.

55.    The Jail's actions reflect a deliberate indifference and willful disregard for the safety of residents living close to the Jail, including Plaintiffs' decedent.

56.    It was foreseeable that the Jail's actions in allowing prisoners to roam free outside, without supervision, would place residents like Tammy Long at a great risk of harm.

57.    The Jail's affirmative and deliberate actions rendered the Plaintiffs' decedent more vulnerable to dangers than had the Defendant not acted in the manners described above.

58.    Furthermore, the conferring of Trustee status upon Crissman resulted in Crissman's actions being imputed to the Jail. By giving such special status to Crissman, the Jail was affirmatively asserting that it entrusted Crissman to safely and responsibly carry out his duties as a Trustee and representative of the Jail itself.

59.    Plaintiffs' decedent suffered injuries and damages, as indicated above and as more fully stated below, as a result of the defective policies, procedures, practices, directives and/or administrative procedures (hereinafter referred to as "policies"), as well as the reckless and/or deliberate indifference to the safety, health and constitutional rights of Plaintiffs' decedent in the following particulars:

    a.  Approving Crissman for Trustee status less than a week into his confinement, despite an obvious drug problem;

    b.  Approving Crissman for the Trustee program despite actual knowledge and evidence that he was going through drug withdrawal;

    c.  Approving Crissman for the Trustee program without first conducting a drug test;

    d.  Placing Crissman in the Work Release housing unit when, according to his classification, he should have remained in the Male Minimum Security unit;

11

A-44

e. Permitting inmates such as Crissman to be considered for the Trustee status without first having them commit to a meaningful period of supervised probation;

f. Having inadequate staffing levels;

g. Having in place a process for approving prisoners for Trustee status that did not consider factors such as an extensive criminal history and a history of non-compliance related to substance abuse;

h. Giving inmates on tray duty the authority and permission to prop open an outside door;

i. Giving volunteers from the work release unit the authority to volunteer and be accepted for tray duty;

j. Authorizing or permitting inmates to be outside without supervision or monitoring;

k. Providing inmates in the Trustee program with civilian clothing that consisted of dark green uniforms, tennis shoes and t-shirts, such that residents within the community in which the Jail was a part of would be unable to recognize an inmate, such as Crissman, as an escapee;

l. Utilizing a "walkaway" escape policy that failed to notify the public and emergency services of a Jail escapee within a short period of time;

m. Having in place a policy of lax training, or in many instances, no training regarding the supervision of inmates at the Jail;

n. Having in place a policy of lax security and supervision to such a degree that it allowed Crissman a clear opportunity to simply "run-off" and easily escape the confinement of the Jail;

o. A policy of choosing cost-savings over security;

p. Improperly monitoring or supervising inmates at the Armstrong County Jail who had known violent propensities;

q. Having in place a policy of providing inadequate security personnel at the Armstrong County Jail during the 12-8 shift;

r. Having emergency procedures in place that did not contain a warning system to alert nearby residents, such as Tammy Long, of the escape of a potentially violent inmate;

s. Failing to utilize a fence around the Jail's perimeter, despite it being

12

A-45

located near a residential area;

t.  Having in place an escape protocol that did not immediately notify 911 and other emergency services of Robert Crissman's escape;

u.  By having in place other policies delineated by the D.A. Report and CSI Report; and,

v.  Having in place open deficient polices as may be further determined in discovery.

60.  The above actions of the Defendant directly and proximately caused the death of Tammy Long.

61.  By reason of the aforesaid, Tammy Long's civil rights were violated, including but not limited to those guaranteed under the Fourteenth Amendment to the Constitution of the United States and Constitution of the Commonwealth of Pennsylvania.

62.  Plaintiffs claim on behalf of the Estate any and all damages to which recovery may be made under § 8301 et al., which include but are not limited to the following:

a.  The cost of funeral and burial expenses occasioned by the death of Tammy Long;

b.  Loss of the value of services, assistance, comfort, guidance, counseling, companionship, and society of Tammy Long, past and future;

c.  Loss of financial support and all pecuniary benefits which would have been contributed by decedent to support her family to the end of her life expectancy;

d.  The expenses of the administration of the Estate of Tammy Long;

e.  Other financial losses suffered as a result of Decedent's injuries and death; and,

f.  Such other losses and damages as are recoverable by law or statute.

WHEREFORE, the Plaintiffs demand judgment in their favor against this Defendant for an amount in excess of the applicable Federal Jurisdictional limits, exclusive of interest and costs.

### COUNT II – 42 U.S.C. § 1983
**Tara L. Long and Todd J. Long, Administrators of the Estate of Tammy E. Long
-vs- Armstrong County d/b/a Armstrong County Jail
(Survival Action)**

63.     Plaintiffs incorporate by reference all proceeding paragraphs as though the same were more fully set forth at length herein.

64.     As a direct and proximate result of the previously described conduct of the Defendant, which is incorporated by reference herein, Plaintiffs seek damages pursuant to the provisions of 42 Pa. C.S.A. § 8302, which include, *inter alia*:

    a.    Decedent's pain, suffering, mental anguish, inconvenience and other such damages that are permitted by law;

    b.    Decedent's loss of earnings and/or earning potential during the balance of her life expectancy calculated from the date of her death;

    c.    Such other losses and damages as are recoverable by law or statute; and,

    d.    Punitive damages.

WHEREFORE, the Plaintiffs demand judgment in their favor against this Defendant for an amount in excess of the applicable Federal Jurisdictional limits, exclusive of interest and costs.


### COUNT III – 42 U.S.C. § 1983
**Tara L. Long and Todd J. Long, Administrators of the Estate of Tammy E. Long
-vs- David Hogue
(Wrongful Death)**

65.     Plaintiffs incorporate by reference all proceeding paragraphs as though the same were more fully set forth at length herein.

66.     At all times relevant hereto, Defendant David Hogue was an agent of the County and/or the Commonwealth, acting in the course and scope of his employment and engaged in the performance of his duties as the Warden for the Armstrong County Jail.

67.     At all times relevant hereto, Defendant Hogue was acting under the color of law

14

pursuant to his authority as an officer of the Defendant, Armstrong County Jail.

68.    As Warden, Defendant Hogue was the commanding officer of all other officers working at the Jail, was responsible for the implementation and promulgation of the policies and customs of the Jail, and was further responsible for the training, conduct and supervision of the officers and employees of the Jail.

69.    As Warden, Defendant Hogue was a policy maker for the Armstrong County Jail, and it was therefore his duty to see that there were in place policies noted above, procedures, practices, customs, directives and/or other administrative procedures which assured that prisoners who were taken into custody at the Jail did not escape, and to further provide for the safety of the residents of the surrounding community. It was also his duty to see that such laws, ordinances, policies, procedures, customs, directives and/or other administrative procedures were actually followed by all Jail personnel or contractors.

70.    At all times relevant hereto, Defendant Hogue had actual and/or constructive knowledge of the policies and customs set forth above, and that said policies and/or customs would act to deprive and/or violated the constitutional rights of those such as Tammy Long.

71.    It was the duty of Warden Hogue to assume responsibility for the safety of the Jail's surrounding community and to assure that inmates did not escape from their confinement.

72.    In addition to the deficient policies noted above, the Plaintiffs' decedent suffered the injuries and damages described above as a result of the Defendant's conduct in instituting and implementing the following policies:

      a.    Instituting a policy which inadequately trained, supervised, monitored or disciplined officers where the need for more or different training, supervision, monitoring or discipline was obvious;

      b.    In failing to correct (through training, discipline, monitoring, policy

15

A-48

changes, etc.) Jail employees' conduct;

c.   In failing to investigate whether the Jail's officers and/or employees were complying with the policies and and/or customs, and whether such policies or customs in place provided the necessary security to prevent inmates from escaping;

d   Delegating the assigned responsibility of approving inmates for the Trustee program to another employee;

e.   Instituting the policies which led to the assignment of Crissman to the Trustee program.

f.   In failing to respond to the lieutenant's telephone calls when Crissman was escaping; and,

g.   Instituting the aforementioned policies and procedures noted in all of the proceeding paragraphs above which are incorporated by reference, all of which led to a *laissez-faire* atmosphere of security at the Jail.

73.   The above actions of the Defendant were the direct and proximate cause of Ms. Long's injuries and death.

74.   By reason of the aforesaid, Plaintiffs' decedent's civil rights were violated, as stated above.

75.   As a direct and proximate result of Defendant's conduct as aforesaid, Plaintiffs sustained the aforementioned injuries and have a right to the damages afforded to them by the Pennsylvania Wrongful Death Statute, which are more fully described in Count I above and incorporated herein.

WHEREFORE, the Plaintiffs demand judgment in their favor against this Defendant for an amount in excess of the applicable Federal Jurisdictional limits, exclusive of interest and costs.

16

## COUNT IV – 42 U.S.C. § 1983
### Tara L. Long and Todd J. Long, Administrators of the Estate of Tammy E. Long
### –vs– David Hogue
### (Survival Action)

76.    Plaintiffs incorporate by reference all proceeding paragraphs as though the same were more fully set forth at length herein.

77.    As a direct and proximate result of Defendant's conduct as aforesaid, Plaintiffs sustained the aforementioned injuries and have a right to the damages afforded to them by the Pennsylvania Survival Act statute, which is more fully described in Count II above and incorporated herein.

WHEREFORE, the Plaintiffs demand judgment in their favor against this Defendant for an amount in excess of the applicable Federal Jurisdictional limits, exclusive of interest and costs.

Respectfully submitted,

KONTOS MENGINE LAW GROUP

   s/George M. Kontos
George M. Kontos, Esquire
PA I.D. No. 62712
Katie A. Killion
PA I.D. No. 205203
KONTOS MENGINIE LAW GROUP
603 Stanwix Street
Two Gateway Center, Suite 1228
Pittsburgh, PA 15222
(412) 709-6162
(412) 904-3820/facsimile
gkontos@kontosmengine.com
kkillion@kontosmengine.com

17

JS 44 (Rev. 12/12)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS
TARA L. LONG and TODD J. LONG,
Administrators of the Estate of
TAMMY E. LONG, Deceased

**DEFENDANTS**
ARMSTRONG COUNTY d/b/a
ARMSTRONG COUNTY JAIL and
DAVID HOGUE

(b) County of Residence of First Listed Plaintiff   Armstrong
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant   Armstrong
*(IN U.S. PLAINTIFF CASES ONLY)*
NOTE   IN LAND CONDEMNATION CASES, USE THE LOCATION OF
THE TRACT OF LAND INVOLVED.

(c) Attorneys *(Firm Name, Address, and Telephone Number)*
KONTOS MENGINE LAW GROUP
603 Stanwix Street, Suite 1228
Pittsburgh, PA 15222    (412) 709-6162

Attorneys *(If Known)*

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

☐ 1   U.S. Government
Plaintiff

☒ 3   Federal Question
*(U.S. Government Not a Party)*

☐ 2   U.S. Government
Defendant

☐ 4   Diversity
*(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff*
*(For Diversity Cases Only)*    *and One Box for Defendant)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☒ 1 | ☒ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 422 Appeal 28 USC 158 | ☐ 375 False Claims Act |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 365 Personal Injury - Product Liability | ☐ 690 Other | ☐ 423 Withdrawal 28 USC 157 | ☐ 400 State Reapportionment |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 367 Health Care/ Pharmaceutical Personal Injury Product Liability | | | ☐ 410 Antitrust |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | | | **PROPERTY RIGHTS** | ☐ 430 Banks and Banking |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | | | ☐ 820 Copyrights | ☐ 450 Commerce |
| ☐ 151 Medicare Act | ☐ 340 Marine | ☐ 368 Asbestos Personal Injury Product Liability | | ☐ 830 Patent | ☐ 460 Deportation |
| ☐ 152 Recovery of Defaulted Student Loans (Excludes Veterans) | ☐ 345 Marine Product Liability | **PERSONAL PROPERTY** | **LABOR** | ☐ 840 Trademark | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 370 Other Fraud | ☐ 710 Fair Labor Standards Act | **SOCIAL SECURITY** | ☐ 480 Consumer Credit |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability | ☐ 371 Truth in Lending | ☐ 720 Labor/Management Relations | ☐ 861 HIA (1395ff) | ☐ 490 Cable/Sat TV |
| ☐ 190 Other Contract | ☐ 360 Other Personal Injury | ☐ 380 Other Personal Property Damage | ☐ 740 Railway Labor Act | ☐ 862 Black Lung (923) | ☐ 850 Securities/Commodities/ Exchange |
| ☐ 195 Contract Product Liability | ☐ 362 Personal Injury - Medical Malpractice | ☐ 385 Property Damage Product Liability | ☐ 751 Family and Medical Leave Act | ☐ 863 DIWC/DIWW (405(g)) | ☐ 890 Other Statutory Actions |
| ☐ 196 Franchise | | | ☐ 790 Other Labor Litigation | ☐ 864 SSID Title XVI | ☐ 891 Agricultural Acts |
| | | | ☐ 791 Employee Retirement Income Security Act | ☐ 865 RSI (405(g)) | ☐ 893 Environmental Matters |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | | **FEDERAL TAX SUITS** | ☐ 895 Freedom of Information Act |
| ☐ 210 Land Condemnation | ☒ 440 Other Civil Rights | **Habeas Corpus:** | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 896 Arbitration |
| ☐ 220 Foreclosure | ☐ 441 Voting | ☐ 463 Alien Detainee | | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 899 Administrative Procedure Act/Review or Appeal of Agency Decision |
| ☐ 230 Rent Lease & Ejectment | ☐ 442 Employment | ☐ 510 Motions to Vacate Sentence | | | ☐ 950 Constitutionality of State Statutes |
| ☐ 240 Torts to Land | ☐ 443 Housing/ Accommodations | ☐ 530 General | | | |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment | ☐ 535 Death Penalty | **IMMIGRATION** | | |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other | **Other:** | ☐ 462 Naturalization Application | | |
| | ☐ 448 Education | ☐ 540 Mandamus & Other | ☐ 465 Other Immigration Actions | | |
| | | ☐ 550 Civil Rights | | | |
| | | ☐ 555 Prison Condition | | | |
| | | ☐ 560 Civil Detainee - Conditions of Confinement | | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

☒ 1   Original Proceeding    ☐ 2   Removed from State Court    ☐ 3   Remanded from Appellate Court    ☐ 4   Reinstated or Reopened    ☐ 5   Transferred from Another District *(specify)*    ☐ 6   Multidistrict Litigation

## VI. CAUSE OF ACTION
Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
28 USC § 1331
Brief description of cause:
Civil rights action based on wrongful death and survival claims

## VII. REQUESTED IN COMPLAINT:
☐ CHECK IF THIS IS A CLASS ACTION UNDER RULE 23, F.R.Cv.P.
DEMAND $      CHECK YES only if demanded in complaint
JURY DEMAND:   ☒ Yes   ☐ No

## VIII. RELATED CASE(S) IF ANY
*(See instructions)*    JUDGE      DOCKET NUMBER

DATE   11/4/15      SIGNATURE OF ATTORNEY OF RECORD

**FOR OFFICE USE ONLY**

RECEIPT #     AMOUNT     APPLYING IFP     JUDGE     MAG JUDGE

JS 44AREVISED June, 2009
IN THE UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF PENNSYLVANIA
THIS CASE DESIGNATION SHEET MUST BE COMPLETED

**PART A**

This case belongs on the (  ○ Erie    ○ Johnstown    ⊙ Pittsburgh) calendar.

1. **ERIE CALENDAR** - If cause of action arose in the counties of Crawford, Elk, Erie, Forest, McKean. Venang or Warren, OR any plaintiff or defendant resides in one of said counties.

2. **JOHNSTOWN CALENDAR** - If cause of action arose in the counties of Bedford, Blair, Cambria, Clearfield or Somerset OR any plaintiff or defendant resides in one of said counties.

3. Complete if on **ERIE CALENDAR**: I certify that the cause of action arose in_____ County and that the _____ resides in_____ County.

4. Complete if on **JOHNSTOWN CALENDAR**:  I certify that the cause of action arose in _____County and that the_____resides in _____County.

**PART B** (You are to check ONE of the following)

1. ○  This case is related to Number_____ . Short Caption_____
2. ○  This case is not related to a pending or terminated case.

DEFINITIONS OF RELATED CASES:
CIVIL: Civil cases are deemed related when a case filed relates to property included in another suit or involves the same issues of fact or it grows out of the same transactions as another suit or involves the validity or infringement of a patent involved in another suit EMINENT DOMAIN: Cases in contiguous closely located groups and in common ownership groups which will lend themselves to consolidation for trial shall be deemed related.
HABEAS CORPUS & CIVIL RIGHTS: All habeas corpus petitions filed by the same individual shall be deemed related. All pro se Civil Rights actions by the same individual shall be deemed related.

**PARTC**

I. CIVIL CATEGORY (Select the applicable category).

1. ○  Antitrust and Securities Act Cases
2. ○  Labor-Management Relations
3. ○  Habeas corpus
4. ⊙  Civil Rights
5. ○  Patent, Copyright, and Trademark
6. ○  Eminent  Domain
7. ○  All  other federal question cases
8. ○  All  personal  and property damage tort cases,  including  maritime,  FELA, Jones Act, Motor vehicle, products liability, assault, defamation,  malicious prosecution, and false arrest
9. ○  Insurance indemnity, contract and other diversity cases.
10. ○  Government Collection Cases (shall include HEW Student Loans (Education), V A  Overpayment, Overpayment of Social Security, Enlistment Overpayment (Army, Navy, etc.), HUD Loans, GAO Loans (Misc. Types), Mortgage Foreclosures, SBA Loans, Civil Penalties and Coal Mine Penalty and Reclamation Fees.)

I certify that to the best of my knowledge the entries on this Case Designation Sheet are true and correct.

Date: ___11/4/15___     _____
                                         ATTORNEY AT LAW

NOTE: ALL SECTIONS OF BOTH FORMS MUST BE COMPLETED BEFORE CASE CAN BE PROCESSED.

## CERTIFICATE OF SERVICE

We, George M. Kontos, Esquire and Claire McGee, Esquire, hereby certify that a true and correct copy of the foregoing Joint Appendix-Volume II was filed on September 23, 2016 with the Clerk of Court using the CM/ECF system and thereby becoming immediately available to the following:

THE MACMAIN LAW GROUP, LLC
David J. MacMain
101 Lindenwood Drive, Suite 160
Malvern, PA 19355
*Attorney for the Defendants-Appellees, Armstrong County d/b/a*
*Armstrong County Jail and David Hogue*

By: /s/ George M. Kontos
George M. Kontos, Esquire
gkontos@kontosmengine.com

By: /s/ Claire McGee
Claire McGee, Esquire
cmcgee@kontosmengine.com

KONTOS MENGINE LAW GROUP
603 Stanwix Street
Two Gateway Center, Suite 1228
Pittsburgh, PA 15219
*Attorneys for Plaintiffs-Appellants*